FRITZ SCHNITZLER v. THE FOURTH NATIONAL BANK OF WICHITA, KAS.

1. PETITION — *Defect Cured.* The defect in the petition in this case in not setting forth the judgment was cured by the answer and the evidence.

2. IMMATERIAL ERRORS — *Statute Applied.* The proceedings in this case bring it under the provisions of paragraph 4223 of the General Statutes of 1889.

3. JUDGMENT, *Application to Vacate — Diligence.* A very high degree of diligence is required to be shown on the part of a person before he can consistently claim that he has been *unavoidably* prevented from defending against a former judgment. If he has been guilty of no negligence, the statutes will give him relief against an unjust judgment.

4. SUMMONS — *Service — Absent on Vacation.* A person may go about his daily avocations of life, and may take his family for a vacation without being guilty of negligence in not receiving a summons left at his usual place of residence, especially when he had no expectation of being sued, and he certainly would not be required to anticipate being sued upon a debt which he did not owe.

5. PROMISSORY NOTE — *Collateral Security.* The legal definition of collateral security is "security for the payment of money *besides* the original security." A note signed by The Journal Publishing Company to the bank is not security *besides* the original security, and hence not collateral security to a note signed by said company and three indorsers to said bank.

6. ——— *Renewal — Surety Released.* Taking a renewal note and the interest in advance for 90 days from the maker of the original note is a legal and binding contract, made upon a valid consideration, to extend the time of the payment of the debt evi-

denced by said original note, and suit could not be maintained upon said debt until the expiration of the time for which said advance interest has been paid. This would release a surety upon the original note who did not assent to the extension of time.

MEMORANDUM.—Error from Sedgwick court of common pleas; JACOB M. BALDERSTON, judge. Action by Fritz Schnitzler against the Fourth National Bank of Wichita, Kas. Judgment for defendant. Plaintiff brings the case here. Reversed. Opinion herein filed November 9, 1895.

The statement of the case, as made by DENNISON, J., is as follows:

This is an action brought in the court of common pleas of Sedgwick county, Kansas, in which the plaintiff in error filed a verified petition under ¶ 4671 of the General Statutes of 1889, asking the court to vacate a judgment which had been prior thereto rendered against him in favor of this defendant in error, upon the grounds set forth in subdivisions 4 and 7 of ¶ 4649, id. The petition filed herein (omitting caption and signature) is as follows:

"Said defendant is a corporation duly organized and doing business under the laws of the United States. On the 19th day of July, 1890, said defendant commenced an action in this, the court of common pleas of Sedgwick county, against the plaintiff and others, being action No. 1020 in said court, wherein said Fourth National Bank was plaintiff, and The Journal Publishing Company, G. W. C. Jones, S. Dunkin, and this plaintiff, Fritz Schnitzler, were defendants, upon a promissory note for the sum of $1,000, executed by said Journal Publishing Company in favor of said Fourth National Bank, and indorsed on the back by this plaintiff as guarantor. On the 10th day of July, 1890, this plaintiff, who then had and now has a place of residence in the city of Wichita,

in said Sedgwick county, left his said residence, his family going with him, for a trip to the mountains in the state of Colorado, and left his said residence shut up and locked, with no one therein or thereabout to receive any message or paper which might be left at his said residence during his absence, and in fact left no person in or about said residence. On the 19th day of July, 1890, a summons was issued against this plaintiff in said action No. 1020 in said court, which said summons was on the 22d day of July, 1890, re-. turned by the sheriff of said Sedgwick county, the officer to whom the same was issued, as served by leaving a copy thereof at the usual place of residence of this plaintiff. On the 5th day of August, 1890, this plaintiff returned to his said residence, he and his said family having been continuously absent therefrom from said 10th day of July, 1890, until that date, during the whole of which time his said residence was closed and no person at the same. No other service of process was ever made or attempted to be made upon this plaintiff in said action other than as shown by said sheriff's return, if such was ever made, of which he has no knowledge. On the 5th day of September, 1890, this court, in said action No. 1020, rendered a judgment against this plaintiff by default upon said promissory note for the sum of $1,254 and costs. Of the pendency of said action this plaintiff had no knowledge until after the rendition of said judgment, and until he was called upon to pay the same. At the time that plaintiff left for said state of Colorado as aforesaid he believed and now believes and now avers it to be a fact that said promissory note had long since been satisfied, either by payment or renewal, and he did not know nor did he believe that any claim would be asserted against him thereon; that no claim had been asserted against this plaintiff upon said promissory note, and his business matters were in that condition when he so left for said state of Colorado; that there were no outstanding obligations upon which he was liable to be sued during his absence.

"Plaintiff says that had he had any knowledge of the pendency of said action No. 1020 in this court, before said judgment was rendered as aforesaid, he would have made his defense in said action; that he has a just and valid defense to the claim asserted against him by said Fourth National Bank upon said promissory note, which he is ready at any time to verify if any opportunity to defend against said claim is given him, and which defense he here states as follows, to wit:

"*First.* For a first defense said Fritz Schnitzler says: That at the maturity of said promissory note so sued upon in said action No. 1020 said promissory note was renewed by a renewal note given said Fourth National Bank by said Journal Publishing Company and others, which was taken and accepted by said Fourth National Bank in satisfaction and payment of the note so sued upon, and to which said renewal note said Fritz Schnitzler was no party; that at the maturity of said renewal note, the same was satisfied by a renewal note given therefor and accepted by said Fourth National Bank in satisfaction thereof, to which renewal note said Fritz Schnitzler was no party; that at the maturity of the renewal note last aforesaid, the same was renewed and satisfied by a promissory note taken by said Fourth National Bank, and accepted by said bank in satisfaction thereof, to which last said renewal note said Fritz Schnitzler was no party, either as maker, indorser, guarantor, security, or otherwise.

"*Second.* For a second and further defense, said Fritz Schnitzler says: That at the maturity of said promissory note, so as aforesaid sued upon in said action No. 1020 in this court, said maker, the Journal Publishing Company, was perfectly solvent and was solvent for a long time thereafter; and if said Fourth National Bank had demanded payment of said promissory note at the maturity thereof, or within a reasonable time thereafter, and attempted to collect the same, said promissory note would have been paid, and could easily have been collected from said Journal Publishing Company, for which company this

plaintiff was guarantor only upon said promissory note; that the time of payment of the obligation for which said promissory note so as aforesaid was given was extended from time to time by renewals of said note as set forth in said first cause of defense foregoing, to which reference is here made, and the allegations in that behalf in said first cause of defense are hereby made a part of this second cause of defense; that upon the last of said renewals, the interest was paid by said Journal Company in advance in consideration for such renewal, and the extension of time of payment of the indebtedness evidenced by the promissory note so as aforesaid sued upon, which was from time to time extended, in consideration of the payment of the interest as aforesaid, as shown by the renewals aforesaid.

"Said Fritz Schnitzler says that at the time said action No. 1020 was commenced, said Journal Publishing Company was and now is insolvent, and said obligation cannot be collected from it, and that by reason of the negligence and *laches* on the part of said the Fourth National Bank in delaying the collection of said obligation and the renewals aforesaid, this plaintiff is discharged from all liability on said promissory note. And further, said Fritz Schnitzler says an execution has been issued upon said judgment in said action No. 1020 in this court, and said Fourth National Bank is proceeding to enforce the payment of said judgment upon said execution.

"Wherefore, plaintiff prays that said Fourth National Bank may be enjoined from proceeding upon said execution upon said judgment until the final determination of this action, and that said judgment in said action No. 1020, as to this plaintiff may be set aside, and this plaintiff permitted to make his defense therein, and for such other and further relief as this plaintiff may be entitled to.''

To which petition the defendant in error filed the following answer (omitting caption and signature):

"Now comes the defendant in the above-entitled

action, and for its answer to plaintiff's petition says : 'That it admits its incorporation and organization as alleged.    It admits that on the 19th day of July, A. D. 1890, it commenced the action against the plaintiff in this action.    It also admits and alleges the fact to be that on the 5th day of September, 1890, at the September term of this court, it obtained a judgment against this plaintiff in the sum of $1,254 and costs of the action.    This defendant alleges that this court had jurisdiction of the subject-matter of the action and of the parties defendant thereto ; and further alleges that service of summons was duly and legally made upon the said Fritz Schnitzler, by leaving a copy of said summons at his usual place of residence in the manner and time as by law required.    This defendant denies each and every allegation contained in plaintiff's petition, except such as are hereinbefore admitted.    Wherefore defendant demands judgment.''

Upon a trial of the issues raised by the pleadings, the defendant in error objected to the introduction of any testimony under said petition, for the reason that it does not state facts or contain allegations sufficient to constitute a cause of action in favor of the plaintiff and against the defendant ; which said objection was by the court overruled.    The plaintiff in error introduced his testimony and rested, and the defendant in error introduced no testimony, and submitted the cause on the testimony of the plaintiff.    Whereupon the court rendered judgment for the defendant.    The plaintiff brings the case here for review.

O. G. Eckstein, and H. T. Dedrick, for plaintiff in error.

Wall & Brooks, for defendant in error.

The opinion of the court was delivered by

Dennison, J. : To maintain this action the plaintiff must allege and prove three things : (1) The

judgment sought to be vacated; (2) the grounds to vacate it; (3) the defense to the action.   The defendant in error in its brief claims that the petition does not set forth the judgment complained of.   This contention will not avail him now, for the reason that the defect in the petition in not setting forth the judgment is cured by the answer which admits the rendition of the judgment, and the evidence which contains the petition, summons and judgment in full. (*Mitchell v. Milhoan*, 11 Kas. 617, and cases therein cited; and *Clay v. Hildebrand*, 34 id. 702, and cases therein cited.)   The question of the defect in the petition in not "setting forth" the judgment is first raised in the defendant's brief.   (*Andrews v. Alcorn*, 13 Kas. 351.)

The defendant in error objected to the introduction of any testimony under the petition for the reason that it does not state facts or contain allegations sufficient to constitute a cause of action.   (*Barkley v. The State*, 15 Kas. 99, and cases therein cited.)   The objection to the introduction of evidence under the petition for the reason that it does not state facts or contain allegations sufficient to constitute a cause of action relates only to the cause of action.   The petition states the facts to be and alleges that a judgment was rendered by said court against the plaintiff in error; that he was prevented by fraud and unavoidable casualty and misfortune from defending, and that he has a just and valid defense to the cause of action upon which the judgment was rendered.   The court overruled the objection, and we think rightly so, for the reasons above stated.   In the cases of *Hill v. Williams*, 6 Kas. 17, and *Mulvaney v. Lovejoy*, 37 id. 305, cited in defendant's brief, the petitions wholly failed to state that the plaintiffs had a valid and meritorious

defense.   In each case a demurrer to the petition was
filed and sustained in the court below and upheld by
the supreme court.   The syllabus in the said case of
*Hill v. Williams* was evidently the statement of the
reporter, and not the opinion of the supreme court.
No written opinion was filed in the case, and the
judges of the supreme court were not required to pre-
pare the syllabi of their opinions until May 27, 1870.
The decision was made at the January term, 1867,
and the case was not reported until 1870.   The state-
ment of the case and the argument of the plaintiff in
error seem to indicate that the real controversy was
as to the grounds for vacating the judgment and the
defense to the action, and it is probable that these
questions are what the supreme court passed upon.

The substantial rights of the defendant in this case
certainly were not affected by the failure to set forth
the judgment in the petition, for the reason that the
defendant by its answer admitted the rendition of the
judgment and the evidence furnishes the pleadings
and the judgment.   It clearly knew just what judg-
ment it had taken and upon what pleadings it had
taken the judgment, and by admitting the taking
thereof in its answer, it admits that it was fully in-
formed of the claim against it.   When the pleadings
and judgment were introduced in evidence, the de-
fendant raised no objection to them upon the ground
that they had not been set forth in the petition, or upon
the ground that they were not the pleadings upon
which the judgment was founded, or that the judg-
ment was not the one that they had admitted in their
answer.   We think, upon a review of these proceed-
ings, that the case comes clearly under the provisions
of ¶ 4223 of the General Statutes of 1889, which is
as follows :

" The court, in every stage of action, must disregard

any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect.''

The next question to be considered is: Did the plaintiff allege and prove sufficient grounds for vacating the judgment? Upon an examination of the record it is clear that there is neither allegation nor proof of fraud sufficient to vacate the judgment under subdivision 4 of section 568 of the civil code, and we will therefore confine ourselves to subdivision 7 thereof. The plaintiff relies wholly upon an absolute want of knowledge that any suit was brought against him. The summons was served by leaving a copy thereof at the usual place of residence of this plaintiff on the 22d day of July, 1890. On the 10th day of July, 1890, the plaintiff left his residence closed and locked, and with his family went for a trip to the mountains in the state of Colorado, and remained absent until August 5, 1890. The evidence is uncontradicted that neither the plaintiff nor any member of his family knew anything about the summons, and that the plaintiff did not know that suit had been brought until after the judgment had been rendered, and that the first he knew of it was when he was requested to pay the judgment. The petition alleges, and the plaintiff testifies, that he did not know that the defendant in error claimed that he was personally liable on said note. Upon cross-examination the plaintiff stated that there had been talk about renewing the note of The Journal Publishing Company, but that he supposed it was a renewal for the company, and that he was to and did sign as vice-president of the company, and not in his individual capacity. This note the defendant refused to accept because this plaintiff signed it as vice-president, but it does not

clearly appear whether this was considered by him as a renewal of the original note or a renewal of the later notes which this plaintiff had not signed. For all that appears to the contrary, this plaintiff might have supposed they were trying to have him become personally responsible for the renewal notes, and that he declined to do so. Now, is this such a state of facts as shows that this plaintiff was prevented by unavoidable casualty or misfortune from defending against the claim of the defendant in error? He was prevented from defending by a total want of knowledge of the commencement or pendency of the suit. The notice thereof, which the law says shall be by summons, had failed to reach him or come to his knowledge, or to that of any member of his family. No one will claim that it is not a misfortune to be sued and have an unjust judgment rendered against a person without his knowledge. The question, therefore, to be determined in this case is : Was it unavoidable? A case similar to this seems never to have been decided in this state. The nearest to it, probably, is the case of *Winsor v. Goddard*, 15 Kas. 118, in which the facts were very similar to this, except that the plaintiff in error, Winsor, left his family at home, and they did nothing toward putting off the case or notifying the husband and father that he had been sued.

The briefs of the parties in the case at bar show a very commendable research among the authorities upon this point, and a careful examination of them satisfies us that a very high degree of diligence is required to be shown by a person ( and in a case like this by his family left at his usual place of residence ) before he can consistently claim that he has been *unavoidably* prevented from defending against the former

judgment.   If he has been guilty of no negligence, this statute steps in and gives him relief against an unjust judgment.   It would be impossible to give an exact definition of negligence which would govern in all cases, as the circumstances of each case must be considered to determine whether there was negligence in that case.   That which might be negligence in one case and in one transaction might not be negligence in another.   We apprehend, however, that a man may go about his daily avocations of life and transact his business, either in or out of this state, and that he may if he wish take a vacation, and take his family along, without being open to the imputation of negligence in not receiving a summons left at his usual place of residence during his absence.   Especially is this so, when he had no expectation of being sued in his absence.

It will not be contended that, if a man leave his home for a vacation, he must leave his wife or some other member of his family, or hire someone to remain about his premises, for the purpose of looking out for the service of a summons which he had no reasonable apprehension would be issued or served. Nor will it be contended that he would be required to anticipate being sued upon a debt he did not owe ; and that will be this case, if the plaintiff in error substantiates his contention that he is not liable upon said note.   The case might be different if there was a probability that he might have left the state to avoid the service of summons, but such cannot be claimed in this case.   The circumstances show that it was an unavoidable misfortune to this plaintiff in error that he did not receive the summons or know that suit had been brought against him until after judgment had been rendered therein.

This brings us to the third and last question in this case, to wit : Did the plaintiff in error allege and prove a valid and meritorious defense?   The petition alleges that the original note sued on was renewed by a renewal note given to the said Fourth National Bank by said Journal Publishing Company and others, which was taken and accepted by said Fourth National Bank in satisfaction and payment of said original note, and that Schnitzler was not a party to said renewal note.   If this allegation be true, and the bank did take the said renewal note in payment and satisfaction of the note Schnitzler signed, of course he is released, for the note sued upon had been paid.   The petition also alleges that the interest had been paid in advance upon the indebtedness, as a consideration of the extension of the time of the payment thereof, and, by reference to the first cause of defense, that Schnitzler was no party to the renewal.   These allegations are sufficient to sustain the petition.

Having alleged a sufficient, valid and meritorious defense, did he prove one?   Analyzing the transaction, as disclosed by the evidence, we find that on June 25, 1888, The Journal Publishing Company was · indebted to the Fourth National Bank, and that upon that day it gave said bank its promissory note, due 90 days after that date, for the sum of $1,000, with 12 per cent. interest after maturity, and that said Schnitzler and others became sureties upon said note by indorsing their names thereon.   At the maturity of said note, the bank took a note for $1,000 from the said Journal Publishing Company, dated September 23, 1888, due 90 days from that date, and the interest thereon until maturity, at the rate of 12 per cent. per annum, was by the said Journal Publishing Company paid to

said bank in cash. The original note was not surrendered, but the cashier of the bank testified that he pinned the renewal note, signed by The Journal Publishing Company, to the original note as collateral security therefor, and that all of these transactions relate to the same indebtedness. This programme was repeated, and a new renewal note taken as collateral security for the original note, and the interest paid in cash, in advance, until some five or six renewal notes were given. Except at the time of these subsequent renewals, the former renewal note was surrendered and marked paid. Schnitzler appears to have had no knowledge of at least the former renewals. Was Schnitzler released by the first renewal? The first note was about due, and The Journal Publishing Company was evidently not desirous of paying it; so the said company gave the bank its note for the indebtedness of $1,000, and paid said bank in cash the interest thereon for 90 days in advance. The bank calls this new note collateral security for the original note, and attaches it thereto. The legal definition of collateral security is ''security for the payment of money besides the principal security.'' The principal security in this transaction is the note signed by The Journal Publishing Company and indorsed by Schnitzler and two others. The collateral security in this transaction is the note signed by The Journal Publishing Company. This is clearly no security *besides* the principal security, and is only *a portion* of the principal security. It is immaterial what the bank may have called the note, whether it called the new note a collateral note or a renewal note. The question is: What was the legal effect of the transaction? Did the bank enter into a valid contract with The Journal Publishing Company to extend the

time of the payment of the indebtedness?   Could said bank, prior to the maturity of the renewal note, have maintained suit against The Journal Publishing Company?   There was but one indebtedness and but one debt of $1,000 owing from said publishing company to the said bank, and the said bank had, in consideration of the interest which was paid in advance, agreed with said Journal Publishing Company to extend the time of payment thereof for 90 days from the giving of the first renewal note.   This was a legal contract for an extension of time of payment, and it is based upon a sufficient and valid consideration, and suit could not have been maintained on said indebtedness during the time for which said advance interest had been paid.   If this was done without the assent of Schnitzler, he is released from all liability.

The defendant in error argues in its brief that the petition fails to allege that this was done without the knowledge or consent of Schnitzler, and that if it is done with his assent he is a party to it.   We think this last position is correct.   If Schnitzler assented to this renewal he was a party to it and bound by it.   It follows that if he was not a party to it he could not have assented to it, and therefore is not bound by it.   The petition alleges that Schnitzler was no party to the renewal notes.   We think this allegation in the petition is sufficient and is sustained by the evidence. The original note was given on June 25, 1888, and the interest was paid upon the indebtedness until September, 1889, at least, and probably until March, 1890. Judgment was rendered September 5, 1890, for $1,254. The maturity of the note was September 23, 1888. The interest thereon would be but $234.   The most of this had been paid, but notwithstanding this fact the said bank took judgment against Schnitzler for $20

more than it was entitled to if none of the interest had been paid. The plaintiff certainly has a just and valid defense against the interest which has *been paid* the said bank, and it was sufficiently stated in the petition. This is sufficient to cause at least a modification of the judgment.

The judgment of the court of common pleas is reversed, and this case is ordered sent to the district court of Sedgwick county, Kansas, with instructions to vacate and set aside the judgment rendered against Fritz Schnitzler in the case of the Fourth National Bank of Wichita, Kas., *v.* The Journal Publishing Company *et al.*, and to grant a new trial to the said Fritz Schnitzler in said cause.

All the Judges concurring.