WARD, J.
(concurring).—The plaintiffs were coal dealers in the city of Buffalo in the year 1894, and Harwood & Irish were a firm engaged in the same business at the village of Skaneateles, N. Y. This latter firm desired to obtain credit with the plaintiffs in the purchase of coal, and for the purpose of creating such credit the defendant executed and delivered to the plaintiffs the following instrument in writing:
“Skaneateles, N. Y., Jan. 25, 1894.
. “For a valuable consideration, I hereby guaranty to O. N. Shipman & Co. the payment for all bills for coal shipped to' said Harwood & Irish, at Skaneateles, N. Y., by G. N. Ship-man & Go., to the amount of fifteen hundred dollars per month. The understanding between all the parties is that at no time shall there bé standing more than three months’ shipment of coal.
“T. Kelley.”
The action went to trial upon an agreed case stipulated in the evidence, from which it appears :
“ That at different times between the 13th day of April, 1894, and the 15th day of May, 1894, both inclusive,"the said plaintiffs did sell to the said Harwood & Irish coal to the amount and value of §970.74, which sum the said Ilanvood & Irish agreed to pay therefor, but have wholly neglected to do so, except that they have paid to apply thereon, from time to time, sums amounting in all to the sum of §770.74, being in shape of notes given and paid as hereinafter stated, leaving a balance still due and unpaid of §200, for which said Harwood & Irish thereafter, and on or about the 14th day of January, 1895,, made and executed their certain promissory note in 'writing for the sum of §200, payable in one month from the date thereof, with interest, and delivered the same to these plaintiffs, to whose order said note was made payable, and which is now past due. * * * That said sum of §970.74 was the last *749 monthly balance of coal sold and delivered by the plaintiffs to the said Harwood & Irish, and that no transactions for the sale of coal had been had between the parties since that time, and that said sum of $970.74 was actually due on said 15th day of May, 1894, and before any of the notes hereinafter mentioned were o-iven. * * That on the 23d day of June, 1894, notes of different amounts were given by the said Harwood & Irish, accepted by the plaintiffs, for the sum of $970.74, which notes were payable at different times, and that there had been paid on said notes sufficient to reduce the sum, on the 21st day of September, 1894, to $700.43, at which time a new note for the said sum of $760.43, due November 8, 1894, was given and accepted, and that on the last-named date there was paid on said balance $260.43 and interest to that date; whereupon said Harwood & Irish gave two new notes to the plaintiffs, which were accepted by them, each being dated November 8, 1894, one being for the sum of $250, due in twenty days and one for $250, due in one month. On December 3,1894, $100 was paid on the first note of $250, and a new note given and accepted for $150, for fifteen days, which note was paid on January 8, 1895. Said second note of $250 was due September 10, 1894, and on that day $50 was paid thereon, and a new note given and accepted for $200, which was due January 14, 1895 ; and when said note became due, to wit, on the 14th day of January, 1895, the same was taken up by the said Harwood & Irish, and a new note given and accepted in the place thereof, for the sum of $200, due in one month from the date thereof, which has never been paid, and which is the same note mentioned in the complaint in this action. That after said note became due, to wit, on the 25th day of February, 1895, said plaintiffs drew a draft on the said Harwood & Irish, through the Bank of Skaneateles, wherein they requested the said Harwood & Irish to pay the said sum of $200 and interest at three days’ sight, which said draft said Harwood & Irish accepted on February 27, 1895, but which they have never paid. That the defendant had no knowledge of the notes given and accepted as aforesaid, or of the part payments thereon, or of the giving of new notes for the balance ; and the defendant had never requested that the plaintiffs enforce collection of the said account or notes against the said Harwood & Irish and never consented to giving or receiving of any of said notes. * * * That nothing was ever paid the plaintiffs by the said Harwood & Irish, or any other persons for them, for granting any extension of time of payment of any of the notes mentioned, or of the debt represented thereby.”
It was further admitted that on the 11th day of March, 1895, Harwood & Irish made a general assignment for the benefit of their creditors, and that they were insolvent, and that no action had at any time been brought against the said Harwood & Irish by the plaintiffs upon any of the said notes or debts represented thereby.
*750 The complaint in the action was upon the guaranty of the defendant above set forth, alleging the sale of the coal, and contained this averment:
“ That thereafter, and on the 14th day of January, 1895, the said Harwood & Irish made and executed their certain promissory note, in writing, for the sum of $200, payable in one month from the date thereof, with interest, and delivered the same to these plaintiffs, to whose order the said note was made payable; that said note was given in payment of said balance of $200 for the purchase price of the coal hereinbefore mentioned ; that said note and the debt secured thereby is now past due and payable; that the plaintiffs are now the lawful owners- and holders thereof; and that no part of the same, or of the said balance of the purchase price of said coal, has been paid. And judgment was demanded for the amount of the note and interest.”
The defendant’s answer admitted the signing the instrument of guaranty, and alleged by way of defense that the plaintiffs had, without the knowledge or consent of the defendant, repeatedly postponed and extended by agreements between the said plaintiffs and Harwood & Irish and had on various occasions from time to time extended the payment of said sums,, or a part thereof, by receiving and accepting notes and, drafts from said Harwood & Irish unknown to defendant, in payment of the whole or a part thereof, due at some future time, and had at divers times accepted part payment of said notes- and account, agreeing therefor to extend further the payment of a part thereof, and had wrongfully neglected and postponed the collection of the amount so due from Harwood & Irish, well 'knowing their financial condition, until they became wholly insolvent,—all of which was done without the knowledge or consent of the defendant. The learned trial court found the facts as stipulated upon the trial as above set forth, and, as conclusions of law therefrom, that the defendant was discharged from all obligation as the surety of Harwood & Irish, and dismissed the complaint upon the merits.
The appellants here contend that the conclusions of the trial court were erroneous, and the defendant was not discharged, for the reasons: First, that by the terms of the guaranty signed by the defendant, fairly construed, no limit is created upon the time of credit which might be given to Harwood & Irish, and therefore the extension of such payment by note or otherwise, as appears in the evidence, was within the contemplation and permission of the guaranty. Second, that the transactions óf giving the notes, draft, part payments, as above stated, did not in law extend the time of payment of debt for the coal, as there was no consideration for such extension, and that the original indebtedness remained unimpaired by these transactions, and could have been enforced at any time by the plaintiffs against Harwood & Irish. It is difficult to see how either of these contentions can prevail. The guaranty limited the credit in. *751 the first place to $1,500 per month, with the further limitation of three months as the final period of credit; making the total credit $4,500, that should not be exceeded at any one time. Ho authority was given by this guaranty to the plaintiffs to give extended credit, and at the expiration of such credit to again extend, and extend thereafter repeatedly, as appears to have been the case under the instrument of guaranty passed upon in Railroad Co. v. Burkard, 114 N. Y. 197, 23 S. R. 96, and no such power will be inferred. The liability of a surety is limited to the express terms of his contract. His obligations, so far as warranted by the terms employed, should be construed strictly and favorably to him. Ward v. Stahl, 81 H. Y. 406 ; opinion 408. This was simply a guaranty to pay the plaintiffr for the coal upon sale within the limitations aforesaid. Ho authority to the plaintiffs can be inferred from this instrument to extend the payment of a debt for coal that has once become due; consequently, if there is a valid extension of time of payment between the plaintiffs (the creditors) and Harwood & Irish (the debtors) without the consent of the defendant (the guarantor) and surety, then the surety is discharged. The evidence sets at rest the question (which the court finds as a fact) that the amount sought to be recovered in this action for' coal sold became due, and payable on the 15th of May, 1894. After its becoming so due, as we have seen, the term of credit is extended from time to time by the debtor giving and the plaintiffs accepting promissory notes, and part payment at the time such notes are given, and thereby extending the time of payment from May loth, 1894, until the maturity of the note on the 25th of February, 1895, and the further extension of several days by the reason of the draft at three days’ sight accepted February 27, 1895: It would seem superfluous to argue that, in view of the allegation in the complaint that the $200 was received in payment of the balance due for the coal by the plaintiffs from Harwood & Irish, and of the conceded transactions by way of extensions of payments by means of notes, the draft, and part payments, the time of payment for the amount claimed in this action had not been legally extended for nearly a year after the debt guarantied had become due, without the consent of the surety.
It is said in IIalliday v. Hart, 30 N. Y., at page 488 :
“ It was formerly held that any absolute and distinct agreement to give the acceptor time was considered as discharging the drawer and indorsers of a bill of exchange, without any distinction whether or not such agreement was founded on a sufficient consideration to bind the party making it, because at least the acceptor, relying on the honor of the party making it, and that he would abide by it, would naturally relax in his endeavors to pay the bill before the enlarged time, in the meantime might pay less accommodating holders [citing Chit. Bills (9th Am. ed.), p, 466, and cases cited]; but the same author observes that of late a distinction has been taken, and a new *752 doctrine has sprung up and been acted upon, namely, that even an express agreement not to sue, made after giving notice of non-payment, but without sufficient consideration, and without taking any new securities, being nudum pactum, will not discharge the other parties; and several authorities are cited to sustain this proposition,” etc.
2 Daniel, Neg. Inst. (3d ed.) § 1312, p. 329, states the law thus :
v If the debtor takes a túne draft, or renews a note from the principal, the presumption is that the right of action is suspended, and time of payment extended to its maturity; and an indorser of the original bill or note is thereby presumptively discharged.”
And in defining what is a sufficient consideration for such extension, at section 1317b, p. 333, this authority states, in effect, that a part payment upon the original note with a new note given for the balance is a sufficient consideration; and this doctrine is well supported by authority.
In Hubbard v. Gurney, 64 N. Y. 457, opinion 466,467, where a new note was given, and a small payment made upon the old note that had been signed by the surety, it was held that such new note and payment was a sufficient consideration to support the agreement extending the time of. payment; and the court says, at page 466 :
“ The principle is well settled that where the holder of a promissory note takes a new note from the debtor, payable at a future day, he suspends the right of action upon the original demand until the maturity of the last-mentioned note; and the surety upon the same, not assehting thereto, thereby becomes discharged from liability.”
—Citing numerous authorities. And this, the court says, is so, notwithstanding the fact that the original note is not surrendered or given up. From these facts the court says, at page 467 :
“ When this note became due, a small payment was made, and a new note given for thirty days, upon which $200 was afterwards paid, leaving a balance of $700 unpaid. It is quite obvious that here was an implied agreement by which the time of payment of the original note was extended, and this being done without the knowledge of or assent of the defendant, who was a surety, his rights were thereby affected.”
In the case at bar the trial court found (all questions of fact being left to it) that there was, from the facts in this case, such an implied agreement, and it is difficult to see how any other inference could be drawn from the evidence. In Schnitzler v. Bank (Kan. App.), 42 Pac. 496, it was held that taking a renewal note and interest thereon is an extension or time of payment of the old note, and discharges the surety.' The reason of the rule relieving the surety is this: The surety, by his contract, is entitled, as soon as the debt which he se- ■ cures is due, to pay it, and be subrogated to the rights of the *753 creditor to collect the debt of the debtor. If the creditor, by-extending the time of the payment of the debt, deprives the surety, during thp extended period, of this right, the surety is discharged, no matter how brief is the period of extension; and this is so whether the debt during the extended period becomes uncollectible in whole or in part or otherwise. It is •clear that the facts established in this case and found by the court created a valid extension of the payment of the debt from time to time for a period of nearly a year, and until the debtors primarily liable for the coal solcl had become insolvent. Many cases may be cited in support of this position in addition to those already referred to, and among them are the following : Pomeroy v. Tanner, 70 N. Y. 547; Iron Co. v. Walker, 76 N. Y 521; Bank v. Phelps, 86 N. Y. 484; Kane v. Cortesy, 100 N. Y. 132; 2 N. E. 874.
In Jaffray v. Crane, 50 Wis. 349, 7 N. W. 300, a note for part of a debt taken in satisfaction was held to discharge a surety. In Putnam v. Lewis, 8 Johns. 389, it was held that the giving of a promissory note for a book debt suspends the right of action on the book account during the time allowed for the payment of the note. In Fellows v. Prentiss, 3 Denio, 512, there had been a guaranty to pay for goods, as in the case at bar, and it was there held that, if a principal debtor gave the creditor his note for the debt, payable one day after date, the surety was thereby discharged. This" was a case in the court of errors, and the rule laid down by that court was clearly in accordance with the respondent’s contention here. In Myers v. Welles, 5 Hill, 463, the old supreme court, through Cowen, J., where A. was the indorser for the accommodation of the maker, and a, note was given for the debt subsequently without consent of the indorser, it was held he was discharged; that the giving of such note suspended the remedy as against the debtor.
The American & English Encyclopedia of Law sums up the whole matter in volume 24, at pages 833 and 835, as follows,:
“ Where there is a novation of the debt by the acceptance of a new note for an extended period, which will prevent the creditor from suing on the first obligation, the surety will be discharged. It has been held that the mere fact that a creditor takes a note after the maturity of the original debt raises no implication in law that he agrees to give time for the payment of the original debt, and that the agreement to give time must be proved as a fact. But the weight of authority holds the surety discharged by the mere acceptance of such a note.”
—And then refers to note 2, commencing on page 835, giving a large number of cases sustaining the latter proposition, including the Yew York cases just cited and Hubbard v. Gurney, supra.
The appellant relies upon Parmelee v. Thompson, 45 Y. Y. 58, Bank v. Hunsiker, 72 Y. Y. 252, and upon two cases decided by the general term of the first department, and re *754 ported in 8 N. Y. Supp. 679 and 681, being Graham v. Negus and Fuller v. Negus, where goods were sold, and, after the purchase juice thereof had become due, the debtors’ notes were given upon time. In these Negus Oases Judge Daniels says that no agreement on the part of the plaintiffs to extend the time for the payment of the debt until the note should mature was alleged in the answer, but it stood wholly and solely upon the fact that the notes themselves, being in this manner given, did extend the time for the payment of the indebtedness until they respectively matured. An examination of these cases discloses such a different state of facts from the one at bar that they cannot be said to be authority applicable to this case. In those cases no agreement was shown that the time of payment should be extended by the giving of the notes, and the court held that none could be inferred from the bare circumstance that notes had been given and accepted, payable at a future day, for a pre-existing debt. We cannot conclude that the general term of the first department in these decisions assumed to overrule the law as settled by a long line of authorities upon this subject in the courts of this state, including the court of appeals.
The case in 45 N. Y., supra, was where an action upon a note was discontinued, and the costs paid by the defendant upon a parol arrangement that the defendant should pay the costs, the suit be discontinued, and the debtor have time during the next month to pay the note. Here no new security ivas given, and the defendant, in paying the costs, only paid what he was liable to pay before he made the arrangement. In 72 N. Y., supra, there were renewal notes accepted by the creditors (the banks) conditionally, dependent upon the consent of the sureties, which was never obtained ; and there was a question of fact in the case as to whether the renewal was absolute or conditional, and the court refused to interfere with the finding of the jury upon that subject. In none of the cases relied upon by the plaintiff was the right of a surety involved.
The view here taken does not in any manner conflict with the doctrine asserted in IIalliday v. Hart, 30 N. Y. 477, and kindred cases cited in Manchester v. Van Brunt (City Ct. N. Y.), 19 N. Y. Supp. 685, 687, that a part payment of the matured debt, even if accompanied with a verbal agreement for time, does not constitute a sufficient consideration to support such an agreement; but the proposition is here asserted that, where such agreement and part payment is accompanied by a new security extending such time of payment, it is valid and binding, and discharges the surety. The law is well settled that where a new obligation is given in payment of a debt, the debt is canceled, and the creditor must rely upon the new obligation alone. As we have seen, the complaint in this case alleges that the last note given of $200, the amount of which is sought to be recovered in this action, was given in payment of the balance due from Harwood & Irish upon the coal they *755 had purchased of the plaintiffs. The plaintiffs cannot avoid the force of this allegation in their complaint. Independent of any other question in the case, we must hold that, the plaintiffs having received this note in payment of the balance due for the coal, that debt was discharged, and that discharge relieves the defendant absolutely, as the debt which he guarantied is paid; and, while the plaintiffs have a good cause of action upon the note against Harwood & Irish, they have none against the defendant.
The judgment in this action should be affirmed, with costs.